UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ORINOCO NATURAL RESOURCES, INC., MERIDA NATURAL RESOURCES, INC., AND THOMAS M. CLARKE | CIVIL ACTION |
| VERSUS | NO. 19-865 |
| MODERN AMERICAN RECYCLING SERVICE, INC. | SECTION "R" (4) |

## ORDER AND REASONS

The Court has received the partial Rule 12(b)(6) motion to dismiss for failure to state a claim from defendant Modern American Recycling Service, Inc. ("MARS").[1] The Court grants the motion in part: the Court dismisses the recission of contract and unjust enrichment claim (Counts Four and Five), but denies the motion as to the conversion claim (Count Two).

### I. BACKGROUND

This case arises from a dispute over the scrapping of drilling rigs.[2] Plaintiffs—Orinoco Natural Resources, LLC, Merida Natural Resources,

---

[1] R. Doc. 17.
[2] *See* R. Doc. 9 at 3 ¶ 10.

LLC, and Thomas Clarke[3]—allege that they entered into an agreement with defendant MARS to share profits from the scrapping of two rigs,[4] the Brage and the ENSCO 80.[5] Under the alleged agreement, plaintiff would finance the purchase of the rigs, and defendant would conduct the scrapping operation at its facility in Denmark.[6] To this end, plaintiffs advanced defendant approximately three million dollars.[7] But plaintiffs contend that defendant failed to scrap the rigs within the required timeframe.[8]

Specifically, plaintiffs allege that defendant entered two agreements setting deadlines for scrapping the rigs: MARS entered an agreement with Borr Brage, Ltd., to purchase the Brage and scrap it by March 8, 2019.[9] MARS also entered into an agreement with ENSCO Offshore U.K. Ltd. to purchase the ENSCO 80 and scrap it by August 23, 2019.[10] Plaintiffs state that they "believed themselves to have a profit-sharing agreement (in

---

[3] Orinoco, Merida, and Clarke filed the initial complaint against MARS. *See* R. Doc. 1 at 1. The amended complaint, though, listed only Orinoco and Merida as plaintiffs. *See* R. Doc. 9 at 1. Defendant filed a motion to join Clarke under Rule 19, *see* R. Doc. 30 at 1, which was granted, *see* R. Doc. 34 at 10. Clarke and his wife own Orinoco and Merida. *See* R. Doc. 9 at 3 ¶ 8.
[4] *See* R. Doc. 9 at 7 ¶ 23.
[5] *See id.* at 4 ¶ 14.
[6] *See id.* at 3 ¶ 11, 3-4 ¶ 12, 4 ¶ 13.
[7] *See id.* at 4 ¶ 14.
[8] *See id.* at 6 ¶ 19.
[9] *See* R. Doc. 9 at 4-5 ¶ 15.
[10] *See id.* at 5 ¶ 17.

principle, if not necessarily in writing)" regarding the Brage operation,[11] and that this agreement would "serve as a template for future profit-sharing agreements, . . . including (without limitation) the ENSCO 80."[12] Defendant allegedly did not timely execute the written profit-sharing agreements concerning the Brage and ENSCO 80.[13]

Plaintiffs state that following defendant's failure to execute these agreements, they sent a repudiation letter requesting the return of the funds they had remitted to defendant.[14] Although defendant "proposed to forward a mutually executed copy of one of the underlying agreements,"[15] defendant allegedly did not "return[] Plaintiffs' investment."[16] Additionally, defendant has not scrapped either rig.[17] The vessels are allegedly at defendant's Denmark facility, but at the time of the complaint, the facility itself was not operational.[18]

---

[11] *See id.* at 5 ¶ 16.
[12] *See id.* at 7 ¶ 22.
[13] *See id.* at 7 ¶ 25.
[14] *See* R. Doc. 9 at 7 ¶ 25, 7-8 ¶ 26.
[15] *Id.* at 8 n.2.
[16] *See id.* at 8 ¶ 27.
[17] *See id.*
[18] *See id.* at 8-9 ¶ 28.

Plaintiffs filed a complaint[19] and amended complaint[20] in this Court seeking in the first instance return of their payment, the fruits of this investment, and damages for breach of agreement.[21] Defendant moved to dismiss the amended complaint in part.[22] Additionally, defendant filed counterclaims,[23] which plaintiff has moved to dismiss.[24] Defendant has also asked the Court to enjoin a parallel proceeding in Denmark.[25] The Court now addresses defendant's motion to dismiss.

## II. LEGAL STANDARD

To overcome a Rule 12(b)(6) motion, a party must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must "accept all factual allegations in the complaint as true" and

---

[19] R. Doc. 1.
[20] R. Doc. 9.
[21] *See id.* at 14.
[22] R. Doc. 17.
[23] R. Doc. 29; R. Doc. 35.
[24] R. Doc. 40.
[25] R. Doc. 42.

4

"must also draw all reasonable inferences in the plaintiff's favor." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

A legally sufficient complaint must establish more than a "sheer possibility" that the party's claim is true. *See Iqbal*, 556 U.S. at 678. It need not contain "detailed factual allegations," but it must go beyond "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *See id.* (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand*, 565 F.3d at 257 (citations omitted). The claim must be dismissed if there are insufficient factual allegations "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *see Jones v. Bock*, 549 U.S. 199, 215 (2007).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P.

12(d). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

III. **DISCUSSION**

Defendant moves to dismiss three of the five counts in plaintiffs' amended complaint: Count Two for conversion, Count Four for recission of contract, and Count Five for unjust enrichment. The Court addresses each in turn.

A. **Conversion (Count Two)**

Defendant argues that plaintiffs have alleged insufficient facts to satisfy the elements of conversion.[26] Specifically, defendant contends that plaintiffs have not established any form of ownership over the property at issue.[27] Because the complaint states sufficient facts to establish a plausible ownership interest in the property by way of a joint venture, the Court rejects this argument.

---

[26] *See* R. Doc. 17-1 at 4-5.
[27] *See id.* at 4.

6

As an initial matter, the Louisiana "Civil Code itself does not identify causes of action for 'conversion.'" *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 856 (La. 1998). That said, "causes of action for conversion have been inferred from the Codal articles providing that the right of ownership, possession, and enjoyment of movables [is] protected by actions for the recovery of the movables themselves, actions for restitution of their value, and actions for damages." *Id.* Here, plaintiffs sue "to recover either the Vessels, or compensation for their loss."[28] To recover movables, a revendicatory action is available, under which "[t]he owner of a thing is entitled to recover it from anyone who possesses or detains it without right." *Gibbs v. Harris*, 799 So. 2d 665, 670 (La. App. 2 Cir. 2001) (quoting La. Civ. Code art. 526). To recover damages, "a delictual action . . . is available to an owner dispossessed as a result of an offense or quasi-offense or, in other words, a 'tort.'" *Dual Drilling Co.*, 721 So. 2d at 857. Such a delictual action "is grounded on the unlawful interference with the ownership or possession of a movable and is frequently termed an action for 'conversion' in Louisiana." *Id.*

In other words, under Louisiana law, "conversion consists of an act in derogation of plaintiff's possessory rights, and any wrongful exercise or

---

[28] R. Doc. 9 at 10 ¶ 37.

assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion." *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 479 (5th Cir. 2002) (quoting *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 760 (La. 1985)). Such an act can occur in a variety of ways:

> 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel.

*Dual Drilling Co.*, 721 So. 2d at 857. Generally, though, prevailing on a conversion claim requires a plaintiff to "prove that (1) [he] owned [property] misused by [defendant]; (2) the misuse was inconsistent with [plaintiff's] rights of ownership; and (3) the misuse constituted a wrongful taking of the [property]." *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986).

Defendant argues that plaintiffs have failed to allege facts sufficient to establish the "ownership" element of conversion.[29] Specifically, defendant suggests that plaintiff presents a legal conclusion that they are the "true owners" of the rigs at issue, but does not support this conclusion with

---

[29] *See* R. Doc. 17-1 at 4.

8

sufficient facts.[30] According to defendant, plaintiffs may have helped finance the purchase of the property, but their "loan[]" did not confer any rights of ownership.[31]

The complaint, though, avers that the parties formed a business relationship represented by a contract in which plaintiffs promised "to finance [MARS's] acquisition" of two offshore drilling units in exchange for MARS's agreement to scrap the rigs and share with plaintiffs the proceeds from the sale of the scrapped materials.[32] Plaintiffs allegedly advanced MARS $2,882,995 for the purchase of the two offshore drilling units under their agreement.[33] The profit-sharing agreement was not reduced to writing.[34] Based on these alleged facts, the complaint asserts that the plaintiffs are the "true owners" of the drilling units purchased.[35]

The Court finds that these facts provide a facially plausible basis that plaintiffs had some rights of ownership in the rigs. In particular, the relationship described in the complaints bears the hallmarks of a joint venture. "Under Louisiana law, a joint venture requires: (1) '[a] contract

---

[30] *See id.*
[31] *See id.* at 4 n.8, 5.
[32] *See* R. Doc. 9 at 3 ¶¶ 10-11.
[33] *See id.* at 4 ¶ 14.
[34] *See id.* at 5 ¶ 16, 8 ¶ 26.
[35] *See id.* at 10 ¶ 36.

9

between two or more persons'; (2) '[a] juridical entity or person is established'; (3) '[c]ontribution by all parties of either efforts or resources'; (4) contributions 'in determinate proportions'; (5) a 'joint effort'; (6) 'a mutual risk [of] losses'; and (7) 'a sharing of profits.'" *Dragna v. KLLM Transp. Servs., L.L.C.*, 638 F. App'x 314, 317 (5th Cir. 2016) (per curiam) (alterations in original) (citing *Cajun Elec. Power Coop., Inc. v. McNamara*, 452 So. 2d 212, 215 (La. App. 1 Cir. 1984)).

More simply, "[a] joint venture, like a partnership, is a juridical person, distinct from its partners, created by an agreement between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit." *Scheffler v. Adams & Reese, LLP*, 950 So. 2d 641, 648 n.2 (La. 2007); *see also* La. Civ. Code art. 2801 (stating the same for the definition of a partnership). An agreement creating a joint venture can occur orally, and "may be inferred from the conduct of the parties and other circumstances." *Riddle v. Simmons*, 589 So. 2d 89, 92 (La. App. 2 Cir. 1991); *see also Cajun Elec.*, 452 So. 2d at 216 ("There are no hard and fast legal rules fixing the requisites for a joint adventure . . . .").

Here, plaintiffs alleged that the parties made an "agreement"[36] whereby plaintiffs would provide resources in the form of "funds,"[37] defendants would apply their efforts in the form of "the actual scrapping of the rigs,"[38] and both would "share the proceeds."[39] Plaintiffs have therefore pleaded sufficient facts to allow the Court to infer, for the purposes of a motion to dismiss, that a joint venture existed.

"Since the essential elements of a joint venture and a partnership are the same, joint ventures are generally governed by partnership law." *Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Auth.*, 867 So. 2d 651, 663 (La. 2004); *see also Cajun Elec.*, 452 So. 2d at 215.[40] Under Louisiana partnership law, creating a partnership requires that "the property or stock of the enterprise must form a community of goods in which each party has a proprietary interest." *Bulot v. Welch*, No. 15-1158, 2016 WL 3365354, at *3 (E.D. La. June 16, 2016) (quoting *Darden v. Cox*, 123 So. 2d

---

[36] *See* R. Doc. 9 at 3 ¶ 11.
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] "The principal difference between a partnership and a joint venture is that while a partnership is ordinarily formed for the transaction of a general business of a particular kind, a joint venture is usually, but not necessarily, limited to a single transaction, although the business of conducting it to a successful termination may continue for a number of years." *Riddle v. Simmons*, 589 So. 2d 89, 92 (La. App. 2 Cir. 1991).

68, 71 (La. 1960)). As a result, wherever a partnership exists, the partners have a proprietary interest in the partnership's property. Put another way, a partner has the interest of an "owner." *See Proprietary Interest*, *Black's Law Dictionary* (11th ed. 2019).

That said, property can be *used* in a partnership or joint venture, but *owned* by only one of the parties. *See Hayes v. Muller*, 158 So. 2d 191, 195 (La. 1963). The parties "do not *have* to be co-owners of property used in the business." *Id.* (emphasis added). In other words, "it may not be clear whether property used extensively in a partnership business has actually become the property of the partnership itself, or whether instead, the original owner of the property has retained its ownership and merely contributed to the partnership its use." 7 Glenn G. Morris & Wendell H. Holmes, *Louisiana Civil Law Treatise, Business Organizations* § 3:6 (2d ed. June 2019 update). The test, therefore, is whether "the behavior of a partner has caused his partners reasonably to conclude that an item of property has been contributed to the partnership." *Id.*

Here, plaintiffs have raised in their complaint sufficient facts to state a plausible claim that they reasonably concluded the rigs had been contributed to the partnership. Plaintiffs plead that the "contemplated purpose" of the

venture included "purchas[ing] . . . platform drilling rigs."[41] To this end, "[p]laintiffs agreed to provide funds to finance the acquisition of two offshore drilling units from third parties."[42] And the parties made plans regarding any rigs "they might acquire"[43] Indeed, plaintiffs allege that their draft profit-sharing agreement "described Defendant's contractual relationship / obligations as 'partnering with [Plaintiffs] *in the acquisition of certain specific assets* [. . .] to share the profits from the scrapping of those assets. . . .'"[44]

Further, even if the sales agreements with third parties called for defendant to conduct the actual purchase of the rigs,[45] defendant's subsequent "demand that Plaintiffs advance MARS the . . . purchase price" for one rig,[46] supports plaintiff's reasonable conclusion that any such purchase was part and parcel of the parties' joint venture. Overall, therefore, plaintiff has pleaded sufficient facts at the motion to dismiss stage to state a plausible claim of an ownership interest in the rigs. Consequently, the Court denies the motion to dismiss the conversion claim.

---

[41]  R. Doc. 9 at 3 ¶ 10.
[42]  *Id.* at 3 ¶ 11.
[43]  *Id.* at 4 ¶ 13.
[44]  *Id.* at 6 ¶ 21 (alterations in original) (emphasis added).
[45]  *See id.* at 4 ¶ 15, 5 ¶ 17.
[46]  *See id.* at 5 ¶ 18.

13

B.    Recission of Contract (Count Four)

Defendant argues that plaintiffs have failed to state a claim for recission of contract, because any allegedly delayed performance would not constitute impossibility.[47] Defendant is correct, and therefore the Court dismisses the claim for recission of contract.

Louisiana law allows for the recission of a contract "[w]hen the entire performance owed by one party has become impossible because of a fortuitous event." La. Civ. Code art. 1876. "A fortuitous event is one that, at the time the contract was made, could not have been reasonably foreseen." La. Civ. Code art. 1875.

Here, plaintiffs' complaint states that the agreements with defendant have become impossible for two reasons. First, plaintiffs allege that "sufficient time does not remain to complete the scrapping of the [rigs] within the timeframe required."[48] Second, plaintiffs allege that at the time of the complaint, "[e]ven if there were sufficient time remaining," the Denmark facility was "incapable of supporting the scrap operations."[49]

The Court finds that neither allegation suffices to state a plausible claim for impossibility due to a fortuitous event. Plaintiffs have stated that

---

[47]    *See* R. Doc. 17-1 at 6.
[48]    R. Doc. 9 at 12 ¶ 49.
[49]    *Id.* at 12 ¶ 50.

the performance of the contract will be delayed because defendant "fail[ed] to initiate timely the scrapping of the Vessels."⁵⁰  But they have not pleaded sufficient facts to raise a reasonable expectation that this delay arises from a fortuitous event.  Another court recently explained what constitutes a "fortuitous event" under Louisiana law:

> Louisiana courts have discussed fortuitous events as an "irresistible force" or "that which happens by a cause which we cannot resist." *Mark Investments, Inc. v. Motwane's Am., Inc.*, 483 So.2d 1187, 1189 (La. Ct. App. 1986).  Louisiana jurisprudence also "uses the terms 'fortuitous event' and force majeure (irresistible force) interchangeably." *Payne v. Hurwitz*, 2007-0081 (La. Ct. App. 1st Cir. 1/16/08), 978 So.2d 1000, 1005.  "Force majeure is defined as 'an event or effect that can be neither anticipated nor controlled.'" *Id.* at 1005 (citing Black's Law Dictionary 673-674 (8th ed. 2004)).  Fortuitous events and force majeure include "such acts of nature as floods and hurricanes" and "[i]t is essentially synonymous with the common law concept of 'act of God.'" *Id.* at 1005 (citing *Saden v. Kirby*, 94-0854 (La. 9/5/95), 660 So.2d 423, 428; *Bass v. Aetna Ins. Co.*, 370 So.2d 511, 513 n. 1 (La. 1979); and *A. Brousseau & Co. v. Ship Hudson*, 11 La. Ann. 427 (La. 1856)).

*Yor-Wic Constr. Co. v. Eng'g Design Techs., Inc.*, 329 F. Supp. 3d 320, 331 (W.D. La. 2018) (alteration in original).

Plaintiffs do not plead facts to indicate that an "act of God" caused the delay.  Rather, they first state that a delay likely will occur—for instance, that "demolition of the Brage has not commenced; and importantly, sufficient

---

⁵⁰ *Id.* at 13 ¶ 52.

15

time does not remain to complete the scrapping of the Brage within the timeframe required."[51] Plaintiffs also argue that the inability of the Denmark facility to support scrap operation is an "independent cause of impossibility."[52]

Alleged dilatory actions on the part of defendant and insufficient facilities, though, do not constitute "fortuitous events." Rather, they are "business risk[s]." *Yor-Wic*, 329 F. Supp. 3d at 331. Merely asserting that plaintiffs could not have reasonably foreseen either of these events based on defendant's representations,[53] does not make such risks fortuitous. As the complaint stands, therefore, it does not raise a reasonable expectation that discovery will reveal that these risks were not "reasonably foreseeable." *Id.* at 332. Consequently, the Court dismisses the claim for recission of contract.

### C. Unjust Enrichment (Count Five)

Finally, defendant argues that plaintiffs cannot pursue an action for unjust enrichment, as they have an available remedy at law.[54] Because the Court has found that a legal cause of action exists, the Court dismisses the unjust enrichment claim.

---

[51] R. Doc. 9 at 12 ¶ 49.
[52] *See id.* at 12 ¶ 50.
[53] *See id.* at 13 ¶ 51.
[54] *See* R. Doc. 17-1 at 9.

Under Louisiana law, when a legal cause of action exists, unjust enrichment does not. Louisiana's Civil Code—which contains Louisiana's substantive law—provides unjust enrichment as only a "subsidiary" remedy. *See* La. Civ. Code art. 2298. Consequently, "when the law provides another remedy," unjust enrichment "shall not be available." *Id.*; *see also Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 245, 246 (La. 2010).

The Fifth Circuit has held that "[t]he important question is whether another remedy is available, not whether the party seeking a remedy will be successful." *See Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*, 581 F. App'x 440, 443-44 (5th Cir. 2014) (per curiam) (citing *Garber v. Baden & Ranier*, 981 So. 2d 92, 100 (La. App. 3 Cir. 2008)). Therefore, "if a plaintiff pleads a legal cause of action in his complaint, he may not also assert a claim for unjust enrichment." *Alford v. Chevron U.S.A. Inc.*, 13 F. Supp. 3d 581, 609 (E.D. La. 2014), *order amended on reconsideration* (June 4, 2014). In other words, when a court finds that a legal cause of action exists based on a plaintiff's pleadings—regardless of whether plaintiff will succeed in proving that claim—this finding precludes unjust enrichment as a cause of action.

Here, as discussed above, the Court has found that plaintiffs sufficiently pleaded the necessary elements to state a claim for conversion. The Court has thus found that a legal cause of action exists, regardless of

plaintiffs' probability of success on this claim. As a result, unjust enrichment is not an available remedy. Indeed, when a plaintiff has "pled a delictual action," like conversion, "[the] plaintiff is precluded from seeking to recover under unjust enrichment." *Walters*, 38 So. 3d at 246.

Furthermore, plaintiffs pleaded a cause of action for breach of contract,[55] which defendant does not move to dismiss.[56] And like conversion, "the existence of a claim on an express or implied contract precludes application of the unjust enrichment theory, because the potential claim constitutes a practical remedy at law." *Scott v. Wesley*, 589 So. 2d 26, 28 (La. App. 1 Cir. 1991) (citing *Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 572 (La. 1989)).

Plaintiffs also concede that the existence of other claims vitiates unjust enrichment as a remedy. In their opposition, they state: "[I]f the Court finds that Plaintiffs have stated one or more claims for the recovery of the full amounts MARS has received from Plaintiffs related to the Vessels, Plaintiffs' unjust enrichment claim need not proceed . . . ."[57] Having found that

---

[55] *See* R. Doc. 9 at 10.
[56] Indeed, defendant moves to dismiss the unjust enrichment claim because "plaintiffs have alleged repeatedly that there are either written or oral agreements between plaintiffs and MARS." R. Doc. 17-1 at 9.
[57] R. Doc. 20 at 9.

18

plaintiffs have stated an action at law that survives this motion to dismiss, the Court dismisses plaintiffs claim for unjust enrichment.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART defendant's motion to dismiss. Specifically, the Court DISMISSES the claims for recission of contract claim (Count Four) and unjust enrichment (Count Five), but allows the claim for conversion (Count Two) to proceed.

New Orleans, Louisiana, this __14th__ day of November, 2019.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE